Filed 9/12/24 Certified for Publication 10/4/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DARREN KRAMER et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>COINBASE, INC., et al.,<br><br>        Defendants and Appellants. | A167779<br><br>(San Francisco City & County<br> Super. Ct. No. CGC-23-604357) |

Plaintiffs Darren Kramer, Manish Aggarwal, Mostafa El Bermawy, and Amish Shah filed a complaint against Defendant Coinbase, Inc. (Coinbase) for public injunctive relief under the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), the California False Advertising Law (Bus. & Prof. Code, § 17500, et seq.; FAL), and the California Unfair Competition Law (Bus. & Prof. Code, § 17200, et seq.; UCL).  The trial court denied Coinbase's motion to compel arbitration on the basis that plaintiffs sought public injunctive relief not subject to arbitration.  We disagree with Coinbase's argument on appeal that plaintiffs' claims are subject to arbitration because they seek private injunctive relief, and we affirm the trial court order.[1]

---

[1] On September 9, 2024, Coinbase filed an unopposed request for judicial notice of two requests for dismissal without prejudice filed in the superior court by plaintiffs Kramer, El Bermawy, and Aggarwal.  We grant the request.  (Evid. Code, § 452, subd. (d)(1).)  We do not opine on whether the superior court had jurisdiction to dismiss any plaintiffs while an appeal

## FACTUAL AND PROCEDURAL BACKGROUND

Coinbase operates an online platform for buying, selling, and transferring cryptocurrencies. Prospective users create accounts to access Coinbase's services.

Plaintiffs are individuals who opened and utilized accounts on Coinbase's cryptocurrency platform. As part of creating their accounts, users are required to accept the terms of a user agreement. Plaintiffs accepted updated user agreement terms in 2022 as part of maintaining their Coinbase accounts. That user agreement contained an arbitration provision, which states in relevant part, "you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms . . . will be resolved by binding arbitration, rather than in court . . . ."

*The Federal Action*

Plaintiffs Aggarwal and El Bermawy filed a class action complaint in federal court (*Aggarwal I*) relating to various losses they sustained on Coinbase's platform. Aggarwal and El Bermawy alleged hackers gained access to their respective accounts and stole funds, and Coinbase failed to protect the accounts, mitigate their losses, or provide support following the thefts. The federal complaint alleged thirteen statutory and common law claims, including violations of the CLRA, FAL, and UCL. It sought various remedies, including "[i]njunctive relief, including public injunctive relief,"

was pending, and note none of the plaintiffs requested dismissal of this appeal.

2

declaratory relief, compensatory damages, statutory damages, treble damages, restitution, disgorgement, punitive damages, and attorneys' fees and costs.

Coinbase moved to compel *Aggarwal I* to arbitration pursuant to the terms of its user agreement. The court granted the motion. (*Aggarwal v. Coinbase, Inc.* (N.D. Cal. 2023) 685 F.Supp.3d 867, 882.) The court first concluded the unilateral contract modification provision did not render the arbitration provision illusory. (*Id.* at p. 877.) The court then concluded the parties delegated the question of arbitrability to the arbitrator, and that delegation clause was not unconscionable. (*Id.* at pp. 879, 881–882.) The court did not address whether the complaint sought public injunctive relief and, if so, whether such a claim could be compelled to arbitration under existing California law.

*The Current Action*

While *Aggarwal I* was pending, plaintiffs filed a complaint in San Francisco Superior Court.[2] The complaint, which arises from the same facts set forth in *Aggarwal I*, asserts Coinbase misrepresented its security features, alleges claims under the CLRA, FAL, and UCL, and exclusively seeks "public injunctive relief."

Coinbase again moved to compel arbitration under the terms of its user agreement. Coinbase argued plaintiffs entered into valid and enforceable arbitration agreements, and, as relevant to this appeal, the complaint fell within the scope of the arbitration provision because plaintiffs sought private injunctive relief.

---

[2] Coinbase removed the initial complaint to federal court based on diversity jurisdiction, and plaintiffs dismissed the action. They then refiled the current complaint, adding a California plaintiff.

3

The trial court denied the motion to compel arbitration. In so holding, the court rejected Coinbase's argument that plaintiffs were seeking private injunctive relief. It explained, "Here, the complaint plainly shows that plaintiffs are only seeking public injunctive relief. . . . Plaintiffs do not request any sort of relief that would solely benefit them or existing Coinbase customers. In fact, . . . defendants' allegedly misleading scheme has already harmed plaintiffs and plaintiffs are aware of defendants' practice. It is thus unclear how the requested injunction will benefit plaintiffs." The court further noted the "federal action buttresses plaintiffs' contention that they are merely seeking public injunctive relief in this case since plaintiffs are seeking individual relief in [*Aggarwal I*]."

Coinbase timely appealed.

## DISCUSSION

On appeal, Coinbase argues plaintiffs' claims are subject to arbitration because they seek private injunctive relief. It further contends plaintiffs failed to prove otherwise.

An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) When, as here, a trial court's order denying a petition to compel arbitration is based on a question of law, we review the denial de novo. (*Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, 749 (*Clifford*).)

## I. Injunctive Relief

"In *McGill* [*v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*)], the Supreme Court, relying on its earlier decisions in *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 . . . (*Broughton*) and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 . . . (*Cruz*), distinguished between the two types of injunctive relief: Private injunctive relief is 'relief that

4

primarily "resolve[s] a private dispute" between the parties . . . and "rectif[ies] individual wrongs" . . . and that benefits the public, if at all, only incidentally.' [Citation.] Public injunctive relief is 'relief that "by and large" benefits the general public . . . and that benefits the plaintiff, "if at all," only "incidental[ly]" and/or as "a member of the general public." ' [Citation.] 'To summarize, public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has "the primary purpose and effect" of prohibiting unlawful acts that threaten future injury to the public. [Citation.] 'Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief.' " (*Ramsey v. Comcast Cable Commc'ns, LLC* (2023) 99 Cal.App.5th 197, 204–205 (*Ramsey*).) The court explained an arbitration provision that waives a plaintiff's right to seek public injunctive relief is invalid and unenforceable. (*McGill*, *supra*, 2 Cal.5th at pp. 951–952.)

The court then applied this framework to the case before it. The plaintiff, McGill, had filed a class action lawsuit against Citibank based on its marketing of a credit protection plan and its handling of a claim she filed pursuant to the plan after she lost her job. (*McGill*, *supra*, 2 Cal.5th at p. 953.) The complaint alleged various violations of California's consumer protection laws, including the CLRA, UCL, and the false advertising laws, and sought "an injunction prohibiting Citibank from continuing to engage in its illegal and deceptive practices," in addition to other relief. (*McGill*, at p. 953.)

The court identified two examples of what constituted public injunctive relief. "[A]n injunction under the CLRA against a defendant's deceptive methods, acts, and practices 'generally benefit[s]' the public 'directly by the

5

elimination of deceptive practices' and 'will . . . not benefit' the plaintiff 'directly,' because the plaintiff has 'already been injured, allegedly, by such practices and [is] aware of them.' " (*McGill*, at p. 955.) Likewise, "an injunction under the UCL or the false advertising law against deceptive advertising practices 'is clearly for the benefit of . . . the general public'; 'it is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff.' " (*McGill*, at p. 955.)

The court thus noted (1) the complaint was brought under the consumer protection statutes, (2) it alleged " 'unfair, deceptive, untrue, and misleading' " advertising and marketing, and " 'false, deceptive, and/or misleading' " representations and omissions, and (3) it sought an injunction " 'to ensure compliance' " with these laws, and to enjoin Citibank from " 'continuing to falsely advertise or conceal material information and conduct business via the unlawful and unfair business acts and practice complained herein.' " (*McGill*, *supra*, 2 Cal.5th at pp. 956–957.) "In light of these allegations and requests for relief," the court concluded the complaint sought public injunctive relief and the plaintiff adequately explained " 'how the public at large would benefit from' that relief." (*Id.* at p. 957.)

## A. Plaintiffs' Complaint Seeks Public Injunctive Relief

Several courts have analyzed whether a complaint asserts public or private injunctive relief under the framework set forth in *McGill*.

In *Mejia v. DACM Inc.* (2020) 54 Cal.App.5th 691 (*Mejia*), the plaintiff purchased a used motorcycle, with most of the purchase financed with a "WebBank-issued Yamaha credit card" he obtained through the dealership. (*Id.* at p. 694.) Mejia subsequently sued the defendant, alleging it violated various state laws, including the CLRA and UCL, by "failing to provide its customers with a *single document* setting forth all the financing terms for

6

motor vehicle purchases made with a conditional sale contract." (*Id.* at p. 695.) The complaint requested an injunction requiring the defendant to provide consumers with a single document containing all required information. (*Id.* at p. 696.) On appeal, the defendant argued *McGill* was inapplicable. It asserted the complaint sought a private—not public— injunction because the injunction would "benefit only a 'narrow group of Del Amo customers'—the class of similarly situated individuals who, like Mejia, would buy a motorcycle from Del Amo with a conditional sale contract." (*Mejia*, at p. 702.) The Fourth District Court of Appeal rejected this argument, quoting the following analysis with approval from Mejia's brief: " '[T]he prayer is plainly one for a public injunction given that Mejia "seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public." [Citation] . . . Mejia's prayer does not limit itself to relief only for class members or some other small group of individuals; it encompasses "consumers" generally.' " (*Id.* at p. 703.)

*Maldonado v. Fast Auto Loans, Inc.* (2021) 60 Cal.App.5th 710 (*Maldonado*) reached a similar conclusion. In that case, the plaintiffs alleged violations of the CLRA, UCL, and FAL based on the defendant charging unconscionable interest rates on loans. (*Id.* at p. 713.) The plaintiffs requested injunctive relief ordering the defendant to "cease and desist its unlawful practices" and prohibiting future violations. (*Id.* at pp. 715–716.) On appeal, the defendant argued "the relief sought 'is private because it will, at best, benefit [the Customers] and a discrete, narrowly-defined group of other . . . customers.' " (*Id.* at p. 720.) The court rejected this argument, explaining the "operative allegations and specific requests for relief" alleged (1) the defendant's misconduct "was ongoing and 'injurious to the public and

7

consumers,' " (2) the defendant "was continuing to provide high interest loans without proper licensing," and (3) the " 'unlawful conduct will continue' " injunctive relief prohibiting " 'future violations.' " (*Id.* at p. 721.) The court thus held the complaint sought public injunctive relief: "In short, the Customers' complaint and prayer does not limit the requested remedies for only some class members, but rather encompasses all consumers and members of the public. Moreover, an injunction under the CLRA against Lender's unlawful practices will not directly benefit the Customers because they have already been harmed and are already aware of the misconduct." (*Maldonado,* at p. 721.)

More recently, in *Ramsey*, *supra*, 99 Cal.App.5th 197, the plaintiff alleged Comcast misrepresented its pricing and discounts in violation of the CLRA and UCL. (*Id.* at pp. 201–202.) The complaint sought to: "(1) enjoin Comcast from engaging in 'unfair or deceptive acts or practices and correcting all false and misleading statements and material omissions . . . to prevent future injury to the general public'; (2) require Comcast to 'halt their practice of issuing secret discounts'; (3) require Comcast to 'comply with their legal obligations and utilize only truthful and complete advertisements, statements, and representations'; and (4) enjoin Comcast from 'continuing their unlawful and unfair business practices.' " (*Id.* at p. 206.) The court concluded "[a]n injunction that seeks to prohibit a business from engaging in unfair or deceptive practices and marketing, requires it to provide enhanced pricing transparency, and requires it to comply with our consumer protection laws, does have the primary purpose and effect of protecting the public, and thus falls within *McGill*'s definition of public injunctive relief." (*Ramsey*, at p. 206.)

The court then addressed the question of "whether an injunction that benefits both existing and potential Comcast subscribers qualifies as a public injunction under *McGill*."[3] (*Ramsey*, at p. 207.) The court followed *Mejia*, *supra*, 54 Cal.App.5th 691, and *Maldonado*, *supra*, 60 Cal.App.5th 710, and concluded "[w]hile the requested injunction in those cases and here may not benefit the entire public as a 'diffuse whole,' we agree with the court in *Maldonado* that 'a requested injunction cannot be deemed private simply because [a business] could not possibly advertise to, or enter into agreements with, every person in California . . . .' . . . *McGill* did not require that public injunctive relief have such a universal reach." (*Ramsey*, *supra*, 99 Cal.App.5th at p. 211.)

We find the reasoning in *Mejia*, *Maldonado*, and *Ramsey* equally applicable here. Plaintiffs' complaint alleges violations of the CLRA, UCL, and FAL. The complaint asserts Coinbase is aware of the importance of security to consumers and thus advertises itself to the public as the " 'most trusted' and 'most secure' cryptocurrency platform." It does so via information on its website and in online, television, and newspaper advertisements. The complaint further alleges ongoing harm toward the public, including: (1) "Coinbase's misrepresentations about its security continue to deceive members of the general public;" (2) "These misrepresentations are targeted to entice consumers into creating accounts and depositing their hard-earned funds with Coinbase"; (3) "Coinbase knew

_____

[3] The court rejected Comcast's argument that the injunctive relief would only benefit "a 'limited group of existing Comcast subscribers,' " noting the complaint asserted that consumers " 'rely on the representations made by service providers in determining whether to purchase their services' " and truthful advertisements would also benefit "any member of the public who considers signing up with Comcast." (*Ramsey*, at p. 207.)

9

that its various claims about being a 'secure' platform were false and misleading but made those statements to induce members of the general public (including Plaintiffs) to do business with Coinbase"; and (4) "If Coinbase is permitted to continue its deceptive and misleading practices, members of the public will suffer irreparable injuries beyond the harm of losing substantial sums of money." All three causes of action then state they exclusively seek public injunctive relief.

These allegations assert harm against the general public. While the complaint contains allegations specific to the individual harm suffered by each plaintiff, those allegations exemplify how Coinbase's actual conduct differs from its marketing statements to the public. And the complaint does not seek relief for those plaintiff-specific injuries. As explained in *Ramsey*, "[a]n injunction that seeks to prohibit a business from engaging in unfair or deceptive practices and marketing . . . does have the primary purpose and effect of protecting the public, and thus falls within *McGill*'s definition of public injunctive relief."[4] (*Ramsey*, *supra*, 99 Cal.App.5th at p. 206.)

In response, Coinbase asserts plaintiffs' complaint seeks relief for themselves and similarly situated individuals. It contends plaintiffs' allegations are more analogous to those in *Clifford*, *supra*, 38 Cal.App.5th 745, *Torrecillas v. Fitness International, LLC* (2020) 52 Cal.App.5th 485 (*Torrecillas*), *Cottrell v. AT&T Inc.* (9th Cir., Oct. 26, 2021, Case No. 20-16162) 2021 WL 4963246 (*Cottrell*), and *Croucier v. Credit One Bank, N.A.* (S.D. Cal., Jun. 11, 2018, Case No. 18CV20-MMA (JMA)) 2018 WL 2836889

---

[4] Coinbase asserts false advertising claims do not *per se* affect the public interest. We need not address this argument because we conclude the specific allegations here adequately demonstrate that the complaint asserts public injunctive relief.

10

(*Croucier*), all of which concluded the plaintiffs were seeking private injunctive relief.

We disagree. The cases cited by Coinbase involved complaints that focused on harm to the plaintiff and did not seek broader injunctive relief. For example, both *Clifford* and *Torrecillas* involved alleged wage and hour violations. In *Clifford*, the plaintiff alleged his employer misclassified him as an exempt employee. (*Clifford*, at p. 748.) The *Torrecillas* plaintiff challenged the employer's failure to pay him certain wages and business expense reimbursements. (*Torrecillas*, at pp. 499–500.) In both cases, the courts noted the alleged violations were directed at the plaintiff, the complaint did not allege similar conduct toward the general public, and the complaint only sought injunctive relief related to the plaintiff or similarly situated employees. (*Clifford*, at p. 753 [complaint alleged violations "directed at *Clifford only*," "does not allege Quest directed similar conduct at other employees, much less the public at large," and the "requests for injunctive relief under the UCL are similarly limited to [Clifford] as an individual."]; *Torrecillas*, at pp. 499–500 [complaint sought "an injunction prohibiting [the employer] from 'continuing to engage in the practices described above,' "—i.e., failing to pay Torrecillas certain wages and business expense reimbursements—and noting any injunctive relief would only benefit "Torrecillas and possibly [the employer's] current employees, not the public at large."].)

Similarly, the claims in *Cottrell* and *Croucier* addressed conduct directed solely at existing customers who were similarly situated to the plaintiffs, not conduct directed at potential customers or the general public. In *Cottrell*, the plaintiff alleged AT&T improperly charged customers for accounts without authorization and sought "an injunction requiring AT&T 'to

11

provide an accounting of all monies obtained' through unauthorized accounts and services; to give customers 'individualized notice' of the violations committed and of their legal rights; and to refrain from committing future violations of the California law by signing customers up for products or services without authorization." (*Cottrell, supra,* 2021 WL 4963246 at p. *1.) The court found this requested relief constituted private injunctive relief because it would only benefit "AT&T customers—'a "group of individuals similarly situated to" ' Cottrell." (*Id.* at p. *2.) Likewise, in *Croucier*, the plaintiff alleged Credit One Bank engaged in improper debt collection methods by utilizing an " 'automatic telephone dialing system' " after he revoked his consent to be contacted by such a system. (*Croucier, supra,* 2018 WL 2836889 at p. *1.) The court concluded the plaintiff's UCL claim sought private injunctive relief because the alleged violations focused on "unlawful conduct directed only at the Plaintiff, rather than the public at large." (*Id.* at p. *4.) In so holding, the court noted the complaint "does not specifically allege similar conduct directed at . . . the public at large." (*Id.* at p. *4.)

As noted above, and unlike the claims in *Clifford*, *Torrecillas*, *Cottrell*, and *Croucier*, plaintiffs' pending complaint alleges that Coinbase directed its conduct toward the public. The complaint asserts Coinbase is continuing to misrepresent its security measures precisely to deceive the general public into creating accounts, investing money, and utilizing its services.[5] The

_____

[5] Coinbase asserts statements regarding its security are "primarily directed at existing Coinbase users," not the public. But the complaint alleges otherwise. It identifies numerous statements on Coinbase's public-facing website and asserts such advertising regarding its security is designed to encourage individuals to create accounts and deposit funds. Likewise, the complaint identifies marketing statements in Coinbase's "social media advertising" and "search engine marketing," X (formerly Twitter) statements by company executives, and online, television, and newspaper advertisements. While the complaint identifies some statements that are

complaint seeks injunctive relief to bar Coinbase from continuing to make such statements to the public.

Coinbase also contends the requested relief primarily benefits users or, at most, potential users, of its platform and not the general public. Similar arguments have been considered and rejected. In *McGill*, for example, the California Supreme Court concluded that enjoining deceptive marketing constituted public relief, rather than benefitting only those individuals who use the bank's services. (*McGill*, *supra*, 2 Cal.5th at p. 957; see also *Mejia*, *supra*, 54 Cal.App.5th at pp. 702–703 [rejecting as "illogic[al]" the argument that requiring a defendant to give disclosure forms when selling vehicles would benefit only "the class of similarly situated individuals who . . . would buy a motorcycle from [the defendant]" under the same type of contract].) And as discussed in Part I.A., *ante*, the *Ramsey* court explained an injunction benefiting existing and potential customers was sufficient to constitute public relief; the requested injunction did not need to "benefit the entire public as a 'diffuse whole.' " (*Ramsey*, *supra*, 99 Cal.App.5th at p. 211.)

Next, Coinbase contends plaintiffs' statements that they would like to continue utilizing Coinbase if the security lapses were remedied indicates the requested relief is private in nature. However, such statements are irrelevant because the complaint does not seek any relief that would require Coinbase to alter its security measures. Here, the causes of action focus on Coinbase's misrepresentation regarding the quality of its security: (1) "Defendants have violated the CLRA by, among other things, representing

---

only accessible once an individual initiates the sign-up process, the majority of statements identified in the complaint are directed to the general public. At this stage, the question is *what relief is being sought by the complaint*, not whether plaintiffs can ultimately prove Coinbase engaged in such conduct or whether they are ultimately entitled to such relief.

that its services have 'characteristics,' 'uses,' and 'benefits' 'that they do not have' "; (2) "Defendants violated the FAL by seeking to induce consumers, including Plaintiffs, to do business with Defendants by disseminating false and misleading statements regarding Defendants' products and services"; (3) "Defendants' conduct is fraudulent because it is likely to deceive reasonable consumers, whether because certain statements are literally false or because Defendants' conduct otherwise has a capacity, likelihood or tendency to deceive or confuse the public." The complaint asserts these misrepresentations are "likely to deceive reasonable consumers." The requested injunctive relief is thus focused on prohibiting Coinbase's misrepresentations regarding its security features—not altering those features. This is relief that primarily benefits the public. (See *McGill*, *supra*, 2 Cal.5th at pp. 951.) And it does not benefit plaintiffs because they are already aware of Coinbase's security features.

*Stout v. Grubhub Inc.* (N.D. Cal. Dec. 3, 2021, Case No. 21-cv-04745-EMC) 2021 WL 5758889 (*Stout*) provides a useful discussion of how to classify different types of injunctions. In that case, the plaintiff alleged Grubhub induced individuals to sign up for a Grubhub+ subscription based on the promise of " 'Unlimited Free Delivery,' " which Grubhub then breached by adding a " 'CA Driver Benefits Fee' " to every Grubhub delivery order. (*Id.* at p. *1.) The complaint then sought two different injunctions: (1) "an order enjoining Grubhub from charging the CA Driver Benefits Fee on Grubhub+ subscribers"; and (2) "an order enjoining Grubhub 'from continuing to engage, use, or employ [its] practice of misrepresenting [its] delivery fees.' " (*Id.* at pp. *1–2.)

In assessing whether the complaint sought public injunctive relief, the court found that an injunction prohibiting Grubhub from continuing to

14

charge Grubhub+ subscribers would constitute private injunctive relief. The court explained this requested relief "is not public injunctive relief because it is primarily designed to benefit Grubhub+ subscribers only, even if the public may incidentally benefit." (*Stout, supra,* 2021 WL 5758889 at p. *7.) Conversely, the court found the second requested injunction—an order enjoining Grubhub from its misrepresentation of delivery fees—constituted "public injunctive relief; the relief sought is a prohibition of false advertising which affects not just existing Grubhub customers but the broader public." (*Ibid.*)

Here, Coinbase appears to confuse an injunction requiring it to modify its security features—which has not been requested—with an injunction requiring it to cease misrepresentations regarding its security features. And such an injunction, like the second injunction requested in *Stout,* constitutes public injunctive relief because it would affect the broader public.[6]

## B. Plaintiffs Did Not Fail to Meet Their Burden of Proof

Coinbase asserts plaintiffs failed to carry their burden of proof by failing to offer any evidence regarding how the public would benefit from the injunctive relief.

---

[6] Coinbase asserts a different conclusion was reached in *Woody v. Coinbase Global, Inc.* (N.D. Cal., Oct. 17, 2023, Case No. 23-CV-00190-JD) 2023 WL 6882750 (*Woody*). While that court concluded the plaintiff sought private injunctive relief, it did so based on its finding that the damages and equitable relief sought "would . . . affect only Coinbase customers." (*Id.* at p. *4.) The court presumably reached this conclusion because the complaint involved misrepresentations regarding an "airdrop" of new digital assets to Coinbase customers holding a specific digital currency unit, XRP, in their accounts. (*Woody v. Coinbase Global, Inc.* (Case No. 23-CV-00190-JD) 2023 WL 6476303 [First Amended Complaint].) As such, the misrepresentations only related to existing customers holding XRP in their accounts—i.e., plaintiffs and similarly situated individuals.

This argument has been rejected by the California Supreme Court in *McGill*. In *McGill*, the defendant, Citibank, argued "that ' "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." ' " (*McGill, supra*, 2 Cal.5th at p. 958.) The Supreme Court first noted "Citibank cites no authority—and we are aware of none—applying this principle, which governs an effort to resist arbitration of a claim the parties *agreed* to arbitrate, to an effort to pursue a claim the parties *excluded* from arbitration." (*Ibid*.) The court then rejected Citibank's argument, explaining, "[a]t this stage of the proceeding—a motion to compel arbitration—it is premature to consider whether [the plaintiff] 'has . . . established' these allegations with proof or how her failure to do so would ultimately affect her request for injunctive relief." (*Ibid*.) The California Supreme Court resolved the question of whether the plaintiff sought public injunctive relief based solely on the complaint's "allegations and requests for relief." (*Id*. at p. 957.)

Multiple courts of appeal have followed this approach. (See, e.g., *Maldonado, supra*, 60 Cal.App.5th at p. 721 ["Customers' complaint and prayer does not limit the requested remedies for only some class members, but rather encompasses all consumers and members of the public."]; *Ramsey, supra*, 99 Cal.App.5th at p. 212 ["Because the relief Ramsey requests both 'seeks to enjoin future violations of California's consumer protection statutes,' and is 'oriented to and for the benefit of the general public,' it falls within *McGill*'s definition of public injunctive relief."].) Even those courts that concluded plaintiffs were seeking private injunctive relief have likewise relied on complaint allegations. (See, e.g., *Clifford, supra*, 38 Cal.App.5th at p. 754 ["Our review of Clifford's complaint discloses no request for injunctive relief that would impact the public"]; *Hodges v. Comcast Cable Commc'ns, LLC* (9th

16

Cir. 2021) 21 F.4th 535, 549 [evaluating complaint allegations and concluding "these requests [for injunctive relief] on their face stand to benefit only Comcast 'cable subscribers.' "]; *California Crane Sch., Inc. v. Google LLC* (N.D. Cal. 2022) 621 F.Supp.3d 1024, 1032 [addressing specific claims and relief as alleged in the complaint].)

To the extent cases have required additional evidence, those cases involve plaintiffs who seek to avoid enforcement of an arbitration provision by alleging fraud (see *Strauch v. Eyring* (1994) 30 Cal.App.4th 181, 187; *Rosenthal v. Great W. Fin. Sec. Corp.* (1996) 14 Cal.4th 394, 413), or other challenges to the circumstances under which the arbitration agreement was executed (see *Owens v. Intertec Design, Inc.* (1995) 38 Cal.App.4th 72, 74 [challenging validity of arbitration provision based on numerous grounds, including his location, location of witnesses, location where contract was executed, and assertion of economic coercion]).

While we agree with Coinbase that courts should not blindly rely on a complaint's prayer for public injunctive relief, such is not the case here. Plaintiffs' complaint does not superficially request such relief but contains supporting allegations and facts. The complaint identifies specific statements at issue, how those statements were conveyed by Coinbase, and why those statements would allegedly mislead the public. These statements, if ultimately proven at trial, would support a claim for public injunctive relief. *McGill* indicates such statements are sufficient at this stage to oppose arbitration. (See *McGill*, *supra*, 2 Cal.5th at p. 958.)

In sum, the trial court did not err in concluding the complaint seeks public injunctive relief and may not be compelled to arbitration.[7]

---

[7] We thus do not reach Coinbase's arguments regarding prejudice or whether it is appropriate to affirm on other grounds.

## II. *Aggarwal I* Does Not Compel a Different Conclusion

Finally, Coinbase appears to suggest that the order compelling arbitration in *Aggarwal I* should impact this court's analysis. Coinbase asserts the existence of *Aggarwal I* indicates this action was filed for "gamesmanship." It contends plaintiffs' delay in filing this complaint, along with the similar factual allegations, indicates the complaint is for the purpose of obtaining financial compensation and leverage in the federal action.

While both actions may involve substantially the same plaintiffs and arise from the same set of facts, *Aggarwal I* alleges various causes of action and seeks relief not sought in this matter. For example, *Aggarwal I* alleges violations of the Electronic Funds Transfer Act, related Regulation E, and the California Uniform Commercial Code. It also alleges causes of action for bailment, conversion, breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and unjust enrichment. The complaint, apart from seeking injunctive relief, also seeks declaratory relief, compensatory damages, statutory damages, restitution, disgorgement, and punitive damages.

The fact that *Aggarwal I* also asserts CLRA, FAL, and UCL claims does not alter our analysis. In *Croucier*, *supra*, 2018 WL 2836889, the original complaint focused on conduct against the plaintiff and sought compensatory and statutory damages. (*Id.* at p. *5.) When the plaintiff amended the complaint to add a claim under the UCL, the court declined to find that the requested injunction sought public relief. The court explained, "Plaintiff did not cite new facts or reasoning supporting the additional claim. . . . The addition of the public relief claim in the absence of new factual information, and its use as a means to avoid arbitration, further indicates that the purpose of the relief sought is unique to Plaintiff." (*Ibid.*) Here, as explained

above, the causes of action and requested relief in the pending complaint are focused solely at Coinbase's misrepresentations directed to the public. Accordingly, the current complaint contains allegations supporting its public relief claim.[8]

## DISPOSITION

The order is affirmed. Plaintiffs may recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[8] While not specifically argued by Coinbase, we note the California Supreme Court held in *McGill* that there is no FAA preemption. (*McGill, supra*, 2 Cal.5th at p. 963.) We, like various other appellate courts to consider the issue, are bound to follow Supreme Court precedent. (See, e.g., *Ramsey, supra*, 99 Cal.App.5th at p. 213 [concluding FAA does not preempt *McGill*]; *Maldonado, supra*, 60 Cal.App.5th at p. 724 [same]; *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1208 [same].) We do so here, concluding that the FAA does not preempt *McGill*. Moreover, the "procedural complexity" concerns raised in *Hodges* that the Ninth Circuit claimed could still be preempted by the FAA, such as "requir[ing] evaluation of . . . individual claims," are not present here. (*Hodges, supra*, 21 F.4th at p. 547.) This case involves alleged misrepresentations regarding the security of its platform as generally asserted by Coinbase to the public, as compared to Coinbase's actual security features.

19

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Fujisaki, J.

A167779/*Kramer et al., v. Coinbase Inc. et al.*

Filed 10/4/24

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| DARREN KRAMER et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>COINBASE, INC., et al.,<br><br>    Defendants and Appellants. | A167779<br><br>(City and County of San Francisco Super Ct. No. CGC-23-604357)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

The opinion in the above-entitled matter filed on September 12, 2024, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in judgment.

Date___October 4, 2024_____          ___TUCHER, PJ_____ P. J.

1

Trial Court:      City and County of San Francisco Superior Court


Trial Judge:      Hon. Richard B. Ulmer



Attorneys:

      Norton Law Firm, William Fred Norton, Gabrielle Hann, Nathan Walker, Josephine Petrick, Celine Purcell, Gilbert Walton, Ashley Nakai, for Defendants and Appellants.

      BraunHagey & Borden, Matthew Borden, Jonas Noah Hagey, John Tobias Rowe, Ronald J. Fisher, for Plaintiffs and Respondents.